# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | No. 3:12 MJ 7045 |
| Plaintiff, ) | |
| v. ) | Vernelis K. Armstrong |
| ) | United States Magistrate Judge |
| HIROSHI YOSHIDA, ) | |
| ) | |
| Defendant. ) | |

### SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
### DEFENDANT'S MOTION TO MODIFY
### <u>CONDITIONS OF PRETRIAL RELEASE</u>

### I.  INTRODUCTION

On August 10, 2012, this Court presided over the hearing on Defendant's Motion to Modify Conditions of Pretrial Release ("the August 10 hearing"), which was filed on July 10, 2012.  The August 10 hearing was cut short, however, due to a conflict in the Court interpreter's schedule.  The Court, therefore, afforded counsel the opportunity to file supplemental written argument by the close of business on Friday, August 24, 2012.

Defendant Hiroshi Yoshida ("Mr. Yoshida") is a citizen of Japan who was arrested more than 60 days ago, on June 21, 2012, based on a criminal complaint that the government filed.  To date, Mr. Yoshida has not been indicted for any crime.  He has no criminal record, and as shown during the August 10 hearing, the government has no evidence that he has committed any offense during the 6 years in which he has lived in the U.S. – with the sole exception of minor traffic violations.  *See* Tr. of 8/10/12 Hr'g at 33 (Doc. 19).[1]  Following his arrest, Mr. Yoshida surrendered his passport to the Court, and through his actions, he has shown both that he is not a

---

[1] The transcript of the August 10, 2012 hearing is attached as Defendant's Exhibit A.  It has been redacted, consistent with the notice of intent that government counsel recently filed (Doc. 22).

flight risk and that he fully intends to respond to any charges brought against him in this matter. Moreover, Mr. Yoshida is a long-time employee (his entire professional career of over 30 years) of a company that has substantial operations here in the United States, employing over 500 people. His employer has executed a bond for $500,000 and has represented, through its counsel, that it will insist upon his continuing presence in the U.S. while this matter is pending.

Accordingly, and for the reasons argued by Mr. Yoshida's counsel during the August 10 hearing as supplemented below, Mr. Yoshida should be relieved of the electronic monitoring condition, which is both extraordinary and unnecessary in a case of this nature, given the relevant facts and circumstances.

## II. SUPPLEMENTAL ARGUMENT

Mr. Yoshida respectfully submits that the Court should relieve him of the electronic monitoring condition because: (1) the Government is unable to show that Mr. Yoshida poses a flight risk; (2) the specific condition is unusual and extraordinary when imposed against a criminal defendant in an antitrust prosecution; and (3) the condition materially and negatively affects Mr. Yoshida's ability to perform essential job functions in his current employment.

A.     <u>Mr. Yoshida does not pose a significant flight risk.</u>

The government has not provided any evidence to support its contention that Mr. Yoshida poses a risk of fight that is significant enough to justify the condition of electronic monitoring. To the contrary, the evidence suggests that the least restrictive combination of conditions for Mr. Yoshida need not include electronic monitoring.

As the case agent's testimony during the August 10 hearing indicates, the government has no knowledge that Mr. Yoshida has ever committed any crime while he has resided within the United States, with the exception of minor traffic violations. *See* Tr. of 8/10/12 Hr'g at 33. Additionally, the case agent's reference in his affidavit to Mr. Yoshida's interest in prospective

2

price-fixing communications with a competitor was based upon the agent's *interpretation* of a recorded telephone conversation in a foreign language – not Mr. Yoshida's actual words.[2] But the agent's mere speculation regarding Mr. Yoshida's alleged motives during a telephone conversation does not amount to evidence that establishes the requisite risk of flight. Significantly, the agent testified that he had no awareness of Mr. Yoshida initiating conversation about prices or other competitive issues during the phone conversation, which the government prompted, and that the agent had no knowledge or awareness that Mr. Yoshida ever had done so within the United States. *See* Tr. of 8/10/12 Hr'g at 33-37.

Further, the case agent's hearing testimony reveals that the government never had any bona fide reason to believe that Mr. Yoshida actually would leave the country. Mr. Yoshida was first put on notice of the government's antitrust investigation on May 31, 2012, when he voluntarily submitted to a government interview in his home for more than four hours. In the three weeks between his interview and the date of his arrest, June 21, 2012, there is no evidence whatsoever to indicate that Mr. Yoshida had any plan to leave the United States.[3] Indeed, there is not a shred of evidence to suggest that Mr. Yoshida has ever so much as contemplated the

---

[2] In reference to the language he included in his affidavit, the case agent testified as follows: "Q. Just to be clear, [the language provided in your affidavit is] not a quote that you took from the transcript, it's your attempt to characterize or paraphrase what was being said during that conversation; is that correct? A. That's correct." Tr. of 8/10/12 Hr'g at 29.

[3] During the August 10 hearing, the case agent testified as follows: "Q. It is your understanding, Agent Brown, that subsequent to that tape-recorded telephone conversation on May 30, 2012, that you or others within the United States Government began monitoring international flights to see whether or not Mr. Yoshida planned to leave the country? A. Essentially, yes. Q. And did you find any indication that Mr. Yoshida had made such arrangements? A. No." Tr. of 8/10/12 Hr'g at 23.

Shortly thereafter during the agent's testimony, the following exchange occurred: "Q. You received and were privy to a report concerning [FBI] Agent Sante's interview of Mr. Yoshida on May 31, 2012; is that correct? A. Yes. Q. Based on that report, did you have any information indicating that Mr. Yoshida was planning to leave the United States? [The Court overrules government counsel's objection]. A. I'm not aware of any information in the report of that interview of Mr. Yoshida mentioning international travel, no." Tr. of 8/10/12 Hr'g at 24-25.

concept of fleeing the United States to avoid prosecution, and any concern the government may advance is completely unwarranted.

Unfortunately for Mr. Yoshida, he still suffers from the effect of the government's unintentional mistranslation of a May 30, 2012 telephone conversation, whereby the government mistakenly believed Mr. Yoshida had communicated a plan to return to Japan in light of an antitrust investigation into his company. Even though the government has acknowledged its error and the Court has corrected the record to reflect that any discussion of Mr. Yoshida's return to Japan was for business-related purposes, and not any attempt to thwart a government investigation, Mr. Yoshida still deals with the consequences and negative inferences that flow from the original allegation.

That Mr. Yoshida is not a flight risk is further evidenced by his full compliance with all conditions of his pretrial release. He has complied dutifully with all that the Court has asked of him during the past two months of his pretrial release. He has shown nothing but appropriate respect for the laws of the United States and the mandates of the Court in connection with these proceedings. Stated simply, there is nothing he has said or done to justify an inference that he would not appear to answer to the charges against him in this case.

In an effort to rationalize this unusual condition for an antitrust prosecution, the government strains to trivialize the significance of Mr. Yoshida's surrender of his passport to the Court. Contrary to the government's assertion, Mr. Yoshida could not obtain another Japanese passport easily or without consequence. As proffered during the August 10 hearing, the Japanese consulate is not aware of any black market for Japanese passports within the United States, and if Mr. Yoshida ever attempted to obtain one from a legitimate source through fraud or in violation

4

of this Court's order, he would expose himself to additional criminal liability in both the United States and Japan.[4] *See* Tr. of 8/10/12 Hr'g at 69-70.

B.     There is No Reason to Treat Mr. Yoshida Differently from Other Antitrust Defendants.

There can be no dispute that the current electronic monitoring condition imposed upon Mr. Yoshida is unusual in an antitrust prosecution. As the government's own data reflects, there has been an average of over 100 antitrust grand jury investigations pending over the last five years, and over 300 individuals have been charged by the Antitrust Division as a result of those investigations, Tr. of 8/10/12 Hr'g at 67-68, and many of those prosecutions have involved foreign defendants. Yet, during the August 10 hearing, both counsel for the government and Mr. Yoshida's counsel proffered that, based on a review of cases brought in recent years, they could identify only one other criminal antitrust defendant who had been subject to electronic monitoring as a condition of pretrial release.

This single other circumstance involved an individual named Homy Hong-Ming Hsu, a citizen and resident of Taiwan who was indicted in 2011 for alleged antitrust violations in the U.S. District Court for the Northern District of California. The government attempts to rely upon the *Hsu* case to justify its position that the electronic monitoring condition is necessary here, but in fact the circumstances of *Hsu* actually undercut the government's position in this case. While the specific facts in *Hsu* may have justified the exceptional condition of electronic monitoring during that antitrust prosecution, those facts are not analogous to the facts in this case. Indeed, the circumstances in *Hsu* are clearly distinguishable from those in Mr. Yoshida's case.[5]

---

[4] The government suggests that Mr. Yoshida could simply travel across the Canadian or Mexican border to obtain a Japanese passport, but such a scenario is highly unlikely and would carry similar risks if he were to obtain a new passport based on false pretenses.

[5] During the August 10 hearing, the government proffered to the Court a written opinion in *Hsu* on that defendant's motion to modify conditions of pretrial release, and the opinion is attached as Defendant's Exhibit B, for

5

First, Hsu was arrested under different circumstances. Hsu was arrested by law enforcement authorities in a United States airport during a layover while he was in transit to Mexico. In fashioning Hsu's bond conditions the court found it significant that Hsu had not voluntarily subjected himself to United States jurisdiction, even though the antitrust authorities had requested him to do so. The court, therefore, considered Hsu's unwillingness to surrender to U.S. jurisdiction as a factor indicating a higher risk of flight. By contrast, Mr. Yoshida never took any steps to avoid U.S. jurisdiction. He was arrested at his residence in Washington Court House, Ohio during the early morning hours of July, 21, 2012. He never gave any indication that he was unwilling to answer for any prospective criminal charges. In fact, prior to his arrest, Mr. Yoshida submitted to a 4.5-hour interview with U.S. law enforcement authorities and also coordinated a separate interview between the government and one of his colleagues who was a subject of the government's investigation.

Second, Mr. Hsu held a very high position within his company, Eagle Eyes Traffic Industrial Co., Ltd. ("Eagle Eyes"), which was also being investigated by antitrust authorities. Hsu reported directly to the Chairman of Eagle Eyes, who was a fugitive in that case. The record reflects that Mr. Yoshida did not hold a similar level of authority with his employer. Moreover, there is no indication that Mr. Hsu's employer had substantial operations in the U.S., unlike Mr. Yoshida's employer.

Third, as reflected in Mr. Yoshida's submissions during the August 10 hearing, the cooperative relationship in antitrust and competition investigations between the United States

---

(continued…)

reference purposes. The decision in *Hsu*, however, is of minimal significance here because Hsu was requesting that the court permit him to travel internationally back to Taiwan, whereas Mr. Yoshida merely requests relief from the electronic monitoring condition of his pretrial release.

6

and his home country (Japan) is substantial and well-established, as distinguished from the situation in *Hsu*. When it addressed Mr. Hsu's pretrial release conditions, the *Hsu* court relied heavily upon the factor that "there is no extradition treaty between the United States and Taiwan, so there is no procedure through which the United States could compel the return of Hsu if he were to [flee]." Def.'s Ex. B at 2. In contrast here, not only is there an extradition treaty between the United States and Japan, the two countries have otherwise demonstrated their cooperative relationship in their treaty on Mutual Legal Assistance in Criminal Matters and their agreement concerning cooperation on anticompetitive activities.[6]

Therefore, the differences between the indicted defendant in *Hsu* and Mr. Yoshida are meaningful and significant. When that court imposed an electronic monitoring condition to protect against Hsu's potential flight risk, it considered factors that are noticeably absent here. Mr. Yoshida's cooperation with law enforcement authorities at the onset of this investigation, his relatively less significant role in his employer's operations, and the cooperative relationship between the United States and Japan each support Mr. Yoshida's argument that this Court should relieve him of the electronic monitoring condition.

C.  The Electronic Monitoring Condition Materially and Adversely Affects Mr. Yoshida and His Ability to Perform His Job.

Finally, in addition to the cultural shame and physical discomfort associated with the Court's current requirement that Mr. Yoshida wear a GPS monitoring device around his ankle, that condition impacts Mr. Yoshida's ability to perform his job duties. Mr. Yoshida's current title with his employer is executive vice president of purchasing and sales for its U.S. subsidiary of the company. In light of this role, Mr. Yoshida is expected to meet with and entertain clients

---

[6] Each of the aforementioned agreements between the governments of the United States and Japan were proffered to this Court by Defendant's counsel during the August 10, 2012 hearing. *See* Tr. of 8/10/12 Hr'g at 66-67.

and potential clients, most of whom are Japanese. For obvious reasons, his employer is reluctant to have Mr. Yoshida interact with clients and potential clients while he wears a court-ordered location monitoring device around his ankle. That device is clearly visible to anyone who would spend any significant time around Mr. Yoshida. For example, when Mr. Yoshida occupies a seated position and his pants legs rise, the device can be seen easily. This Court's modification of Mr. Yoshida's conditions of pretrial release, as requested in Defendant's motion, would enable him to carry out the responsibilities associated with his employment, including client development activities, more effectively.

### III. CONCLUSION

For the reasons set forth above, in addition to the arguments advanced by Defendant's counsel during the August 10 hearing, Defendant respectfully requests that the Court enter an order modifying the conditions of his pretrial release to cancel the electronic monitoring condition.

Respectfully submitted,

s/ Stephen J. Squeri
Stephen J. Squeri
Ohio Bar No. 0012802
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Telephone: 216.586.3939
Fax: 216.579.0212
E-Mail: ssqueri@jonesday.com

        Justin C. Letts
        Ohio Bar No. 0078805
        JONES DAY
        325 John H. McConnell Blvd., Suite 600
        Columbus, Ohio 43215-2673
        Telephone: 614.469.3939
        Fax: 614.461.4198
        E-Mail: jletts@jonesday.com

        Counsel for Defendant Hiroshi Yoshida

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically filed with the United States District Court for the Northern District of Ohio, on this 24th day of August, 2012, and that counsel for the United States of America will be notified of this filing through the Electronic Case Filing system.

                                                s/ Stephen J. Squeri_____
One of the Attorneys for Defendant
Hiroshi Yoshida